THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
TERRY WAYNE BRANHAM, Defendant-Appellant.

Fifth District   No. 5—88—0693

Opinion filed August 20, 1991.

HOWERTON, J., dissenting.

Daniel M. Kirwan and E. Joyce Randolph, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Don Sheafor, State's Attorney, of Vandalia (Kenneth R. Boyle, Stephen E. Norris, and Gerry R. Arnold, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE CHAPMAN delivered the opinion of the court:

Terry Wayne Branham was charged with escaping from the custody of an employee of the Fayette County jail while at the Fayette County Hospital. (Ill. Rev. Stat. 1987, ch. 38, par. 31—6.) Defendant claimed that it was legally necessary for him to escape for two rea-

sons. First, during a prior imprisonment, defendant had been attacked by five men at Shawnee Correctional Center for refusing to perform homosexual acts. Second, he was afraid he would be harmed if convicted and sent to either Menard or Shawnee Correctional Center.

The State moved *in limine* to prohibit defendant from presenting this evidence, arguing that in escape cases necessity is restricted to situations where a prisoner is under threat of immediate harm, and the defense was therefore unavailable to defendant because he had not been under an immediate threat of harm when he escaped since he was not incarcerated in either Menard or Shawnee Correctional Center at the time. The circuit court granted the State's motion and held that defendant's offer of proof was insufficient to raise the defense of necessity.

The jury convicted defendant of escape, and he appeals. We affirm.

The affirmative defense of necessity is defined as follows:

> "Conduct which would otherwise be an offense is justifiable by reason of necessity if the accused was without blame in occasioning or developing the situation and reasonably believed such conduct was necessary to avoid a public or private injury greater than the injury which might reasonably result from his own conduct." (Ill. Rev. Stat. 1987, ch. 38, par. 7—13.)

Necessity involves a choice that can only be made between two admitted evils, other options being unavailable. (*People v. Krizka* (1980), 92 Ill. App. 3d 288, 290, 416 N.E.2d 36, 37.) Slight evidence of the forcing of this choice is sufficient to make the defense an issue for the jury. *People v. Blake* (1988), 168 Ill. App. 3d 581, 587, 522 N.E.2d 822, 826.

Factors to be considered in assessing claims of necessity in escape cases are:

> "(1) The prisoner is faced with a specific threat of death, forcible sexual attack or substantial bodily injury in the immediate future;
>
> (2) There is no time for a complaint to the authorities or there exists a history of futile complaints which make any result from such complaints illusory;
>
> (3) There is no time or opportunity to resort to the courts;

(4) There is no evidence of force or violence used towards prison personnel or other 'innocent' persons in the escape; and

(5) The prisoner immediately reports to the proper authorities when he has attained a position of safety from the immediate threat." (*People v. Unger* (1977), 66 Ill. 2d 333, 342, 362 N.E.2d 319, 323.)

All of these factors, however, need not be present to establish necessity, and the absence of one or more does not necessarily prohibit the assertion of the defense. *Unger*, 66 Ill. 2d at 342, 363 N.E.2d at 323.

It is talismanic that both the accused and the prosecution have the right to present their theory of the case and their version of the facts, so that a jury can decide wherein the truth lies. (*Washington v. Texas* (1967), 388 U.S. 14, 19, 18 L. Ed. 2d 1019, 1023, 87 S. Ct. 1920, 1923.) Motions *in limine*, therefore, should be used with caution, and this is particularly so in criminal cases. (*People v. Brumfield* (1979), 72 Ill. App. 3d 107, 113, 390 N.E.2d 589, 593-94.) However, we do not believe the trial judge abused his discretion in granting the motion *in limine* in this case.

■ Defendant made no contention that there was no time for a complaint to the authorities or that there was no time or opportunity to resort to the courts. While there was no evidence of force or violence used towards prison personnel or other "innocent" persons in the escape, it is also true that defendant did not immediately report to the proper authorities when he had attained a position of safety from the immediate threat. The hearing on the motion *in limine* made clear that defendant was only arguing the first factor set forth in *Unger*.

Defense counsel argued that, if permitted to present testimony at trial, he would prove that the defendant was faced with specific threats of sexual attack or substantial bodily injury in the immediate future. The record reveals that the threats made at Menard were made *after* defendant's escape. The defendant could have been concerned about the possibility of further attacks if he returned to Shawnee, but the trial court specifically found that the threats made to him at Menard could not have played any part in his decision to escape.

The record shows that at the time of escape the defendant was being held in custody on a charge for which he had failed to post bond. He had not yet been tried, convicted, or sentenced, and he was still cloaked with the presumption of innocence. Under these

circumstances we find that the circuit court did not abuse its discretion in granting the State's motion *in limine*.

The judgment of the circuit court of Fayette County is affirmed.

Affirmed.

WELCH, J., concurs.

JUSTICE HOWERTON, dissenting:

I respectfully dissent. Granting the motion in this case goes too far too soon.

There are at least two uses made of motions *in limine*. In one use, inadmissible evidence is excluded. In the other, a whole theory of a case is precluded. The former use serves a most salutary, prophylactic purpose—preventing a jury from hearing and perhaps considering evidence that may range from the most innocuous irrelevancy to that which is poisonous to a fair verdict. The latter use, however, does not involve assessing the evidence, excluding some, allowing other; instead, the latter excludes all evidence of whatever character on the hypothesis that that evidence cannot support a theory. The latter, therefore, chokes off a defense, and it is rudimentary that a motion *in limine* should not be used to choke off a valid defense in a criminal case. *Kansas v. Quick* (1979), 226 Kan. 308, 597 P.2d 1108, *overruled on other grounds Kansas v. Jackson* (1989), 244 Kan. 621, 772 P.2d 747.

It is one thing to grant a motion *in limine* the effect of which is to prohibit a criminal defendant from producing evidence in support of an affirmative defense. It is quite another to allow the evidence to be presented, but to rule at the close of defendant's case that the evidence is insufficient to make the defense as a matter of law. In the former, the court has choked off the right of defendant to attempt to make the defense. In the latter, the court has allowed the defense to proceed, but has ruled the evidence insufficient to make a jury question. I realize in this case that such a ruling might amount to an exercise in futility: *i.e.*, the evidence may comport strictly with the offer of proof, and the court might well withdraw the defense of necessity at the close of the proof. However, in my own experience as a trial lawyer and trial judge, I must note that defense counsel may not fully appreciate the significance of evidence until it has been presented in the context of the actual trial. Significance of evidence to some degree is a function of the personality of the witness, how the jury has accepted the testimony, the

"magic of each fleeting moment" of trial. This significance may best be fully apprehended where instincts have been fully engaged, and instincts are more likely to be fully engaged by a trial than by a motion. The less experienced the trial lawyer, perhaps the more true these general observations are. Under these circumstances, I believe it error to enter an order *in limine* that prevented defendant from presenting the evidence in an attempt to raise the affirmative defense, and it is irrelevant whether the trial court, or this court, would find later that the defendant had not introduced sufficient evidence to generate a jury question. *Commonwealth v. Hood* (1983), 389 Mass. 581, 596, 452 N.E.2d 188, 197 (Liacos, J., concurring).

The State relies upon *United States v. Bailey* (1980), 444 U.S. 394, 416-17, 62 L. Ed. 2d 575, 594-95, 100 S. Ct. 624, 637-38, in which the Supreme Court expressed a fear that if *in limine* proceedings were not used, every escape trial would be converted into a hearing on the current state of the Federal penal system. *Bailey* is distinguishable on two grounds. In *Bailey,* there were multiple defendants. One defendant's case was severed. The case involving the other defendants was tried first, and their evidence of necessity and duress was presented in trial but ruled insufficient to raise those defenses. The severed defendant's case then was tried to a jury with the same trial judge presiding. To prove necessity and duress, the defendant whose case had been severed wanted to present the same evidence the others had presented in their trial. Under those circumstances, the Supreme Court found that it was proper to bar the evidence *in limine.* The two grounds that distinguish *Bailey* are: (1) *Bailey* did not decide any issue of constitutional law, and therefore, does not bind a State court; and (2) in *Bailey,* the evidence had been presented, albeit in an earlier trial, while in the case at bar, the evidence never had been presented.

Furthermore, there is no reason to believe that Illinois courts are encountering a large number of prisoners who convert their own hearings into a debate about prison conditions, as was a problem noted by the United States Supreme Court in *Bailey.* Hence, there is no practical reason for foreclosing an attempt to make a defense.

This is a criminal case, not a civil case. The full power of the State is deployed against the defendant. The government, at least, ought to give him a shot at winning.

I would reverse and remand.