THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ELLIOT WHITE, a Minor, Defendant-Appellant.

First District (3rd Division) No. 1—87—0235

Opinion filed March 15, 1989.—Rehearing denied April 11, 1989.

Steven Clark and Elizabeth E. Clarke, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Patricia Y. Brown, and Laren E. Brown, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WHITE delivered the opinion of the court:

On March 13, 1986, defendant, age 15, was arrested and charged by complaint with the offense of unlawful use of weapons on school grounds. (Ill. Rev. Stat. 1985, ch. 38, par. 24—1(a)(12).) He was prosecuted as an adult under the Criminal Code of 1961 pursuant to exceptions contained in section 2—7(6)a. of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 702—7(6)(a) (now Ill. Rev. Stat. 1987, ch. 37, par. 805—4(6)(a))), which provides:

> "(a) The definition of delinquent minor under Section 2—2 of this Act shall not apply to any minor who at the time of an offense was at least 15 years of age and who is charged with murder, aggravated criminal sexual assault, armed robbery when the armed robbery was committed with a firearm, *or violation of the provisions of subsection 24—1(a)(12) of the Criminal Code of 1961, as amended.* These charges and all other charges arising out of the same incident shall be prosecuted pursuant to the Criminal Code of 1961, as amended." (Emphasis added.)

A motion on defendant's behalf was presented to the trial court asking that his case be remanded to the juvenile court on the basis that this section of the Juvenile Court Act is unconstitutional as applied to

the charge of unlawful use of weapons on school grounds. The motion was denied. In a bench trial defendant was found guilty and sentenced to two years' adult probation, the terms of which included the requirements that he continue his high school education and in addition perform 100 hours of community service.

■ In his trial, defendant did not deny the act charged, but presented the affirmative defense of necessity, which the court rejected. On appeal he presents three issues for review. The first is whether the 1985 amendment to the Juvenile Court Act adding the offense of unlawful use of weapons on school grounds (Ill. Rev. Stat. 1985, ch. 38, par. 24—1(a)(12)) to the offenses which require trial of a juvenile under the Criminal Code is unconstitutional. This issue has been fully considered and answered in the negative by the Illinois Supreme Court in *People v. M.A.* (1988), 124 Ill. 2d 135, 529 N.E.2d 492. We therefore give the same answer here.

The second issue is whether the trial court erred in rejecting defendant's necessity defense. This issue must also be answered in the negative. The defense of necessity is defined by statute as follows:

"Conduct which would otherwise be an offense is justifiable by reason of necessity if the accused was without blame in occasioning or developing the situation and reasonably believed such conduct was necessary to avoid a public or private injury greater than the injury which might reasonably result from his own conduct." Ill. Rev. Stat. 1985, ch. 38, par. 7—13.

The evidence in this case is not in dispute; it was obtained largely through defendant's own testimony. He was a freshman at Wendell Phillips High School and lived with his parents in the Wentworth Gardens Housing Project. His father was a security guard who owned a gun as part of his job. During his freshman year, defendant tried to avoid associating with the youths in school who were members of the gangs, but from September to March he had been questioned daily by some gang members about not belonging to a gang. Finally, on March 11, 1986, two gang youths, who had been harassing him, physically assaulted White and stole his lunch ticket. The boys threatened to shoot him if he told anyone about the incident so he kept quiet about what had happened. The following day the same gang members stole defendant's new leather gloves, pointed a gun at him and threatened to shoot anyone he told about the incident. Defendant testified that he did not tell anyone, particularly his parents, about this incident because he was afraid they would get hurt.

The following day defendant decided to do something to protect himself. He wore a six-pointed star, the symbol of a rival gang, to try

to discourage the gang members from harassing him. He also took his father's gun and some bullets to school in his briefcase. Defendant testified:

> "I was going to show it to somebody, hoping it would get back to them *** that I had a gun and maybe they would leave me alone."

Both the dean of the school and the police officer assigned to the school testified that when they talked with defendant after discovering the gun in his briefcase, he told them he brought the gun to school because the gangs were bothering him.

 Even if we take all of defendant's testimony at face value, it fails to provide the defense of necessity. "[N]ecessity is viewed as involving the choice between two admitted evils where other optional courses of action are unavailable." (*People v. Krizka* (1980), 92 Ill. App. 3d 288, 416 N.E.2d 36.) In *People v. Gindorf* (1987), 159 Ill. App. 3d 647, 512 N.E.2d 770, the defendant contended "that the trial court erred when it found her guilty of murder and not voluntary manslaughter where it was established by all the expert testimony that she believed that it was necessary to kill her children, albeit an unreasonable belief, to avoid the greater injury to the children of forcing them to continue living, after defendant's suicide, their lives doomed to be spent in misery and suffering. She argue[d] that she believed her conduct was justified by reason of necessity ***." (159 Ill. App. 3d at 660.) The court adverted to the statutory definition of necessity (Ill. Rev. Stat. 1985, ch. 38, par. 7—13) and rejected this contention, refusing to accept the defendant's unreasonable belief as a basis for the defense of necessity.

 Nothing at trial demonstrates that defendant could have reasonably believed that carrying a loaded revolver was "necessary" to avoid a private injury which he feared. We read the statutory words "reasonably believed" to justify only such otherwise illegal conduct which constitutes the sole reasonable alternative available to the act. (See generally Tiffany & Anderson, *Legislating the Necessity Defense in Criminal Law*, 52 Den. L.J. 839, 845-46 (1975).) Simple common sense prohibits the conclusion that the sole reasonable alternative available to defendant was to carry a loaded revolver within the City of Chicago in order to protect himself against the threats allegedly made against him.

Defendant cites *People v. Unger* (1977), 66 Ill. 2d 333, 362 N.E.2d 319, and *City of Chicago v. Mayer* (1974), 56 Ill. 2d 366, 308 N.E.2d 601, in support of his position that it was necessary for him to bring a gun to school. However, those cases involving the failure of the trial

court to give the jury an instruction on the defense of necessity are inapposite. In the instant case there is ample evidence to show that the trier of fact considered defendant's necessity claim, but found that defendant had failed to establish the affirmative defense of necessity. The court stated:

"There was time for the defendant to use other conceivable methods. This wasn't a thing where he had to quickly react. It took place over a period of a couple days, even if one believes the defendant.

\*\*\*

Mr. White nor [*sic*] anybody else is not empowered under the facts to act as his own vigilante squad or to handle it in his own fashion \*\*\*."

The third issue is whether the trial court erred in sentencing the defendant to two years of adult probation. On December 30, 1986, at the time of White's sentencing, section 2—7(6)(c) of the Juvenile Court Act provided that if a minor is convicted as an adult pursuant to the exceptions to the Act set forth in section 2—7(6)(a), the court "shall have available any or all dispositions prescribed for that offense pursuant to Chapter V of the Unified Code of Corrections and Article 5 of the Juvenile Court Act." (Ill. Rev. Stat. 1985, ch. 37, par. 702—7(6)(c).) He argues that the trial court in sentencing failed to consider any optional disposition available under the Juvenile Court Act and "probably was not aware it could be considered." Although he failed at the time to object to the sentence and failed to bring any alternative to the attention of the trial court, he urges that we reverse on the basis that the court failed to consider all the available sentencing alternatives. He argues that the sentencing issue is not waived. If we determine that it is waived, he urges this court to review the sentencing on the issue of the ineffectiveness of his counsel at the sentencing hearing.

■ The law does not permit us to presume, as counsel for appellant does, that the trial court at sentencing was unaware of its powers. Indeed our supreme court has repeatedly emphasized that trial judges' decisions in regard to sentencing are entitled to great deference. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) Further, a review of the record urged by appellant indicates that the trial judge was appropriately sensitive to the defendant's youth in his sentencing, incorporating in his order requirements to attend school and perform reasonable public work taken from the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, pars. 705—3(2)(j), (2)(n)). In sentencing Elliot White, the judge said to him:

"Now, don't think this is the end of your life, the fact that you have been convicted of this offense here, because it isn't. It is the beginning of your life. You're a very young person, and with the family that you have, the backing that you have and the good things that you have going for you, even though you made this mistake it seems to me that the future is bright for Mr. Elliot White and it is simply up to you to take advantage of the opportunity you have, young man, in order to succeed in your goals. You have a good goal here, wanting to be a carpenter. Certainly we need such people in this society, so I think that you're the type of person that will probably comply with the type of terms of your probation."

There is nothing in the record to cause us to conclude that the trial court erred in sentencing the defendant.

For the foregoing reasons the judgment of the circuit court is affirmed.

Affirmed.

FREEMAN, P.J., and RIZZI, J., concur.