THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ANTHONY NEWBOLDS, Defendant-Appellant.

Fifth District   No. 5—88—0575

Opinion filed October 16, 1990.

Daniel M. Kirwan and Michelle A. Zalisko, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Charles Garnati, State's Attorney, of Marion (Kenneth R. Boyle,

Stephen E. Norris, and Raymond F. Buckley, Jr., all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE RARICK delivered the opinion of the court:

Defendant, Anthony Newbolds, was charged with aggravated battery and unlawful use of weapons by a felon in connection with an incident that occurred on January 1, 1988. After a jury trial in the circuit court of Williamson County, defendant was acquitted of the aggravated battery charge but found guilty of the weapons offense and sentenced to nine years' imprisonment. Defendant appeals his conviction and sentence. We reverse and remand.

On the evening of December 31, 1987, defendant and his live-in girlfriend, Cheryl Miller Branson, went out to dinner. They became involved in an argument, and Cheryl asked to be dropped off at a nearby bar. Several hours later Cheryl walked home by herself. Defendant accused Cheryl of cheating on him, and the two again began to argue. At this point, the evidence of what happened next varies greatly depending upon which of the three versions Cheryl related to the authorities one chooses to follow. The end result of the couple's argument was that Cheryl was shot in the mouth with a .22 caliber handgun. Defendant drove Cheryl to the hospital, whereupon Cheryl related her first version of the incident. She informed medical personnel and police that defendant had beaten her and then shot her with a gun. She signed a complaint while at the hospital stating the same. Defendant's version of the incident as related by one of the nurses at the hospital was that he and Cheryl had been walking along the street when she was suddenly shot. On January 4, defendant was charged with aggravated battery. Cheryl subsequently was released from the hospital on January 5 and gave a taped statement to the police on January 11. In this statement, Cheryl retracted her earlier statement that defendant had beaten her but did allege he backhanded her across the face in the course of their argument. She further stated she eventually refused to argue any more, prompting defendant to decide to leave. As he was preparing to go, he picked up a gun. In attempting to keep defendant from leaving the house with the gun, Cheryl grabbed for the gun. A struggle ensued in which she was accidentally shot by defendant. On January 12, the following day after the taped interview, defendant was charged with unlawful use of weapons by a felon. Subsequently, on April 11, 1988, Cheryl provided a written statement to the State's Attorney completely exonerating defendant. In this statement, Cheryl claimed she was the one who

originally had possession of the gun. She had been given the gun to protect herself on her walk home alone that morning by an unnamed friend and had pulled the gun out of her purse to scare defendant after he started arguing with her. When defendant reached for the gun to take it away from her, the gun accidentally went off. Cheryl further claimed her finger was on the trigger when the gun discharged. Cheryl also stated she lied in the taped interview to keep herself and her unnamed friend out of trouble. At trial it was revealed Cheryl and defendant were engaged to be married, and Cheryl had visited defendant as often as possible at the county jail from the time she was released from the hospital to the time of trial. Defendant chose not to testify.

Defendant raises three arguments on appeal. Because the first issue is dispositive of the case, we need only address that point. Defendant asserts there was evidence at trial he acted out of necessity, and because an unlawful use of weapons charge does not preclude the possibility of a necessity defense, his attorney's failure to tender to the jury an instruction defining the defense deprived him of a fair trial.

■■ ■ In general, a defendant is entitled to have the jury instructed on the defense of necessity when evidence, sufficient to raise a reasonable doubt as to guilt, has been introduced that the accused, without blame in occasioning or developing the situation, reasonably believed his conduct, which would otherwise be an offense, was necessary to avoid a public or private injury greater than the injury which might reasonably have resulted from his own conduct. (See *People v. James* (1989), 180 Ill. App. 3d 461, 464-65, 535 N.E.2d 1147, 1150; *People v. Govan* (1988), 169 Ill. App. 3d 329, 336, 523 N.E.2d 581, 585.) Here, there was some evidence presented through Cheryl's third version of the incident that defendant may indeed have acted out of necessity to prevent immediate and substantial bodily harm to himself when he reached for the gun. Because the jury was not instructed on the defense of necessity, it cannot be said the jury knew that touching a gun to protect oneself does not constitute possession, whether actual or constructive, within the intendment of unlawful use of weapons by a felon. This is especially true in light of the jury's acquittal of defendant on the aggravated battery charge; clearly the jury chose not to believe Cheryl's initial statement to the police.

■■ ■ Fundamental fairness requires that certain basic jury instructions essential to a fair determination of a case be given. (See *People v. Pegram* (1988), 124 Ill. 2d 166, 173, 529 N.E.2d 506, 509; *People v. Ogunsola* (1981), 87 Ill. 2d 216, 222-23, 429 N.E.2d 861, 864-

65.) Because defense counsel did not tender such an essential instruction on the defense of necessity, defendant was deprived of effective assistance of trial counsel. And, because this omission so prejudiced the defense, defendant was also deprived of a fair trial. (*Pegram*, 124 Ill. 2d at 174, 529 N.E.2d at 509.) We cannot say in this instance but for counsel's error the result of the proceeding in all reasonable probability would have been the same. (See *Strickland v. Washington* (1984), 466 U.S. 668, 694, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068; *People v. Albanese* (1984), 104 Ill. 2d 504, 525, 473 N.E.2d 1246, 1255.) We therefore must reverse defendant's conviction and remand the cause for a new trial.

For the aforementioned reasons, we reverse the judgment of the circuit court of Williamson County and remand this cause for a new trial.

Reversed and remanded.

CHAPMAN and GOLDENHERSH, JJ., concur.