2018 IL App (2d) 151242
No. 2-15-1242
Opinion filed June 8, 2018

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) | |
| v. | ) | No. 14-CF-2021 |
| | ) | |
| KOREN M. HAIMAN, | ) ) | Honorable Daniel P. Guerin, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE HUDSON delivered the judgment of the court, with opinion.
Justices Schostok and Spence concurred in the judgment and opinion.

**OPINION**

¶ 1    After a jury trial, defendant, Koren M. Haiman, was convicted of unlawfully possessing a controlled substance (720 ILCS 570/402(c) (West 2014)). The trial court denied her motion for a new trial and imposed 24 months' first-offender probation (see *id.* § 410). On appeal, defendant contends that the trial court erred in granting the State's pretrial motion to bar her from testifying that, at the time of the offense, she had a legal prescription. We affirm.

¶ 2                                        I. BACKGROUND

¶ 3    On December 11, 2014, the State charged that, on or about May 16, 2014, defendant knowingly and unlawfully possessed a substance containing hydromorphone.[1] On August 4,

_____

   [1] The State had earlier charged defendant with driving with a suspended license (625

2015, defendant filed notice that she would be presenting an affirmative defense based on section 302(c)(3) of the Illinois Controlled Substances Act (Act) (*id.* § 302(c)(3)). As pertinent here, section 302(c)(3) allows the possession of controlled substances by "an ultimate user *** pursuant to a lawful prescription of a practitioner." *Id.*

¶ 4 On August 17, 2015, in a discovery motion, the State requested a copy of the prescription, the name of the issuing physician, and the date of issuance. On August 20, 2015, at a hearing, defendant's attorney clarified that she had no more discovery to tender, that only defendant would testify to the prescription, and that she would not name the physician or the date of issuance.

¶ 5 On August 24, 2015, the State moved *in limine* to bar any statements by defendant as to a lawful prescription. The State argued as follows. Section 302(c)(3) is a statutory exemption. Therefore, under section 506 of the Act, the burden of proof is upon the person claiming it. *Id.* § 506. Defendant had failed to tender any evidence to place her within the exemption. Section 312(a) of the Act (*id.* § 312(a)) allows a practitioner to dispense a controlled substance "upon a written or electronic prescription of any prescriber, dated and signed by the person prescribing *** on the day when issued and bearing the name and address of the patient for whom *** the controlled substance is dispensed." Thus, the State reasoned, the information provided in a prescription is created by the prescriber or practitioner and is not within the patient's personal knowledge, making defendant's statements inadmissible hearsay. Moreover, under section 312(g) of the Act, even one with a lawful prescription for a controlled substance "may lawfully

---

ILCS 5/6-303 (West 2014)) and two other traffic offenses. At trial, the court granted defendant a directed verdict on the license offense, and the State later dismissed the other charges.

possess such substance only in the container in which it was delivered to him or her by the person dispensing such substance." *Id.* § 312(g).

¶ 6    Further, the State contended, defendant's mere statement that she had had a lawful prescription for the drug would not satisfy her burden of proof under section 506.  Finally, to allow the statements would be unfairly prejudicial; without the name of the prescribing physician or the date of issuance, the State would be unable to investigate and rebut the claim of an exemption.

¶ 7    On August 24, 2015, the trial court heard the State's motion.  The prosecutor argued that a fact finder could not conclude that defendant had had a lawful prescription if she could not say when and by whom the prescription had issued.  Defendant's attorney contended that the prosecutor's argument went to the weight to be given defendant's statements, not their admissibility.  She added that defendant should be allowed to present her defense.

¶ 8    In an offer of proof, defendant's attorney stated that defendant would testify "that a doctor did give her a valid prescription, she is unable to remember which doctor, because she's had a lot of medical procedures in the past few years."  The attorney added that defendant could not provide a name "but she [could] certainly say that it was not unlawfully obtained, that she was given a prescription from a doctor."  The court asked whether the foregoing would be sufficient to shift the burden of proof.  Defendant's attorney responded that she would have defendant testify to "where she's lived, *** how many different procedures she's had, in what span of time, you know, she can just give a little bit of background as to her medical history."  The court observed that it would be "very easy" for defendant to say that she had had a prescription but could not remember the doctor or the date of issuance, but then the State would have been "tendered no discovery, no doctor name, no prescription, no [']is it Walgreens' on

Roosevelt Road.['] I mean nothing. So they can't rebut it." Defendant's attorney reiterated that defendant could testify about her numerous medical procedures. But in response to the court's question "[h]as that all been disclosed?" she said, "No, *** because we're not going to get into the details of it." The court noted that the undisclosed information was defendant's explanation of why she could not remember the doctor or the date of the prescription.

¶ 9    The court also was troubled by the possibility that, if it denied the State's motion, defendant would testify that "all of a sudden she remembers the name of the doctor or *** there's information that the State never had." Defendant's attorney stated that she had spoken with defendant and that defendant did not remember that information. She reassured the court that she would not be "getting into any specifics" and did not believe that defendant would testify to any specifics.

¶ 10    The prosecutor argued that the shortcomings in defendant's proposed testimony went not merely to its weight but to whether the matters were within her personal knowledge; otherwise, testimony about the prescription would be inadmissible hearsay. Further, if defendant were to testify about her medical procedures and residence changes, then she would have to disclose that information to the State. Defendant's attorney noted that defendant had had "so many different doctors and ER visits that she [did not] even know." Although the attorney "would [have] love[d] to have been able to give the State a few different doctors to talk to," she was "not in that position." The prosecutor responded that for this very reason the State would be put into an impossible position by defendant's testimony: it would require the State "to go send out subpoenas to every pharmacy we could possibly imagine in order to rebut this defense."

¶ 11    The court stated that allowing defendant to testify to having had a prescription issued by a named doctor on a specific date might not violate the hearsay rule, but that allowing her mere

testimony that she had had a prescription, without giving the State any basis for that testimony, would be improper. In the court's view, defendant had not tendered the State sufficient information to place her within the exemption. The court concluded, "I don't think that in this situation it would be permissible, the State having no information at all about this to allow it to go forward based on what [defendant] presented." The court granted the State's motion.

¶ 12    At defendant's jury trial, the State first called Salvador Perez, a Warrenville police officer. He testified as follows. On May 16, 2014, at approximately 9 a.m., he was on patrol and saw a vehicle being driven with an expired registration. He stopped the car and approached. Defendant was driving, and there was a male passenger. Perez asked defendant for her driver's license and proof of insurance. She looked for the documents in her purse. Perez saw that the license was expired, placed defendant into custody for the violation, and called a backup officer.

¶ 13    Perez testified that, because the passenger did not have a valid license, he called to have the car towed. Next, he conducted an inventory search. Inside the purse were two pill bottles with labels and one pill bottle without a label. Inside the unlabeled bottle were five yellow pills and two white ones. Perez took the bottles to the police station, where he called a pharmacist in Oswego. Based on the conversation, the five yellow pills were returned to defendant. Perez placed the bottle and the two white pills into an evidence locker and later submitted them for testing.

¶ 14    Perez testified that he interviewed defendant about the seven pills in the unlabeled bottle. She said that the five yellow ones were hers but that she did not know how the two white ones got in there.[2] She added that she did not know anything about the pills.

---

[2] The trial court had earlier suppressed defendant's statements to Perez, based on *Miranda* violations. Here, the court admitted the statement on redirect examination because, on

¶ 15    The court qualified Ticia Burge of the Du Page County Forensic Science Center as an expert in the analysis of controlled substances.  She testified that she analyzed one of the white pills and concluded to a reasonable degree of scientific certainty that it contained hydromorphone.  She also stated that the label had been torn off the bottle; there was a small portion left, but nothing was printed on it.

¶ 16    In closing argument, defendant maintained that the State had not proved that she knew that the white pills had been in her purse.  The jury convicted her.  She filed a motion for a new trial, contending in part that the court had erred by barring defendant from asserting as a defense that she had had a lawful prescription for the hydromorphone.  The trial court denied the motion and imposed 24 months of first-offender probation.  Defendant timely appealed.

¶ 17                                   II. ANALYSIS

¶ 18    On appeal, defendant contends that the trial court abused its discretion by granting the State's motion to bar her from testifying that she had been lawfully prescribed hydromorphone.  Defendant argues that the trial court violated her constitutional right to present a defense and that the testimony could have been allowed with no unfairness to the State, which had been fully informed of the defense that she intended to present.  Defendant asserts that case law construing section 302(c)(3) of the Act allows the admission of a defendant's testimony that she was prescribed a controlled substance.  The State responds that the trial court properly barred defendant's testimony because section 302(c)(3) required her to introduce evidence of the practitioner who issued the prescription and that it was lawful and defendant would have been unable to testify to either prerequisite.

cross-examination, defendant had "opened the door" by questioning Perez whether defendant ever told him where the white pills came from.

¶ 19    We hold that, under the totality of the circumstances, the trial court did not abuse its discretion in refusing to allow defendant to testify to the unsupported conclusion that, on the date at issue, she had a lawful prescription for hydromorphone.

¶ 20    A criminal defendant has the right to a meaningful opportunity to present a complete defense. *Holmes v. South Carolina*, 547 U.S. 319, 331 (2006); *People v. McCullough*, 2015 IL App (2d) 121364, ¶ 104. This right is infringed by the exclusion of defense evidence under rules that serve no legitimate purpose or are disproportionate to the ends that they are asserted to promote. *Holmes*, 547 U.S. at 326; *McCullough*, 2015 IL App (2d) 121364, ¶ 104. Nonetheless, a trial court may exclude evidence upon which a proposed defense is based if, in the exercise of its discretion, the court determines that the probative value of the evidence is outweighed by other factors, such as unfair prejudice, confusion of the issues, or potential to mislead the jury. *Holmes*, 547 U.S. at 326; *McCullough*, 2015 IL App (2d) 121364, ¶ 104. The trial court's decision will not be disturbed absent an abuse of discretion. *McCullough*, 2015 IL App (2d) 121364, ¶ 104. The court abuses its discretion only when its decision is arbitrary, fanciful, or unreasonable, or when no reasonable person would take its view. *Id.*

¶ 21    Although this case deals with not a specific rule of evidence but rather an evidentiary ruling based on general principles of relevance, the foregoing principles apply: defendant contends that by excluding her testimony the trial court deprived her of a legitimate defense. Moreover, the balancing test that *Holmes* and *McCullough* call for is not noticeably dissimilar from that used generally in deciding whether to admit evidence: does the probative value of the evidence outweigh its potential for undue prejudice? Based on these principles, we cannot say that the trial court abused its discretion in barring defendant from testifying that, at the time at

issue, she had a lawful prescription. Several considerations militate in favor of our conclusion that the court's decision was neither unreasonable nor unfair.

¶ 22    Had defendant been allowed to raise her defense of a lawful prescription, she would have had the burden to prove that it applied. 720 ILCS 570/506 (West 2014); *People v. Kathan*, 2014 IL App (2d) 121335, ¶ 25. Essentially, the sole evidence that she could have supplied was her own nonspecific testimony that, at the time of the stop, she had a lawful prescription. Yet, with no testimony as to who prescribed the hydromorphone, when the prescription was issued, for how long it was valid, or even where it was filled, defendant's testimony would have verged on a conclusion of ultimate fact.

¶ 23    We note first that allowing testimony verging on a bare conclusion (if indeed not going over the line) would render the burden of proof under section 506 of the Act essentially meaningless. Indeed, it would allow a defendant to assert the defense in a manner that we cannot assume the Act's drafters intended. Second, even the vague testimony in defendant's offer of proof would appear to have been legally insufficient. As the State noted, even with a lawful prescription, a person "may lawfully possess such substance only in the container in which it was delivered to him or her by the person dispensing such substance." 720 ILCS 570/312(g) (West 2014). The offer included no testimony to this effect. Moreover, at least in retrospect, we can see why: the trial evidence showed that the two pills were found inside a bottle, with a missing label, containing a wholly different drug for which defendant had a prescription.[3]

_____

[3] Also, although defendant's statements to Perez were suppressed because of *Miranda* violations, the one that the court admitted at trial—that she did not know how the hydromorphone pills got into the bottle—was inconsistent with her proposed defense of a lawful prescription. We recognize that, had defendant been allowed to present this defense instead of

¶ 24    Thus, the trial court reasonably considered defendant's proposed testimony to be insufficient to raise a statutory defense that should go to a jury. As opposed to this, the court recognized that to allow this testimony would have placed an unreasonable and unfair burden on the State: in order to rebut the defense (as opposed to simply undermining it on cross-examination), the State would have had to prove a negative by going on a "wild goose chase"— but instead of having to contact every pharmacy that defendant had visited until it found the "goose," it would have had to contact all of them in order to prove that there was no "goose." The court reasonably considered this to be an excessive and unreasonable burden. Also, we cannot discount the court's concern with the possibility, even if remote, that defendant would disclose the needed facts only after she took the witness stand.

¶ 25    Defendant relies heavily on *People v. Kolichman*, 218 Ill. App. 3d 132 (1991), for the proposition that, because the lawful-prescription exemption is "tantamount to an affirmative defense" (*id.* at 144), she needed to produce only "some evidence" (internal quotation marks omitted) (*People v. Johns*, 387 Ill. App. 3d 8, 13 (2008)) or "slight evidence" (*People v. Kucavik*, 367 Ill. App. 3d 176, 179 (2006)) to be entitled to place it before the jury. However, even granting this much, the evidence, however slight, must relate to the requirements of the exemption. Here, defendant's offer of proof did not include even slight evidence that the person who issued the alleged prescription was a "practitioner" as section 302(c)(3) requires or that it

relying on lack of knowledge, the State would not have been able to use the statement to rebut her testimony directly. However, it appears that the State could have introduced her statement to impeach her testimony. See *Oregon v. Hass*, 420 U.S. 714, 722-24 (1975); *People v. Harris*, 375 Ill. App. 3d 398, 406 (2007).

was a "*lawful* prescription" as it also requires. (Emphasis added.) 720 ILCS 570/302(c)(3) (West 2014).

¶ 26 By contrast, in *Kolichman*, the defendant did meet this threshold. He was charged with a controlled-substances offense and relied on the lawful-prescription exemption. At trial, he testified that he had received a prescription from a named physician and had refilled it twice. Further, he introduced into evidence copies of receipts from a named pharmacy and testified that the substances taken from him at his arrest came from the unused portion of the prescription. *Kolichman*, 218 Ill. App. 3d at 137. Thus, although *Kolichman* supports defendant's contention that she was required to introduce only some evidence that the exemption applied to her in order to place that defense before the jury, in this case the proffered evidence did not satisfy even this requirement.

¶ 27 We note that defendant attempted to shore up her offer of proof by including proposed testimony about her numerous medical procedures and residences in the years preceding her arrest. However, beyond the fact that this proposed testimony was only tangentially related to whether defendant had a lawful prescription for a specific controlled substance at a specific time, her attorney conceded that she had not disclosed this information to the State and could make only limited and general disclosures. Thus, the proposed corroboration, such as it was, did not strengthen the argument for admitting defendant's testimony.

¶ 28                                    III. CONCLUSION

¶ 29 We hold that the trial court did not err in excluding defendant's proposed testimony. Therefore, we affirm the judgment of the circuit court of Du Page County. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal. 55 ILCS 5/4-2002(a) (West 2016); see also *People v. Nicholls*, 71 Ill. 2d 166, 178 (1978).

¶ 30    Affirmed.