NOTICE
This Order was filed under
Supreme Court Rule 23 and
is not precedent except in the
limited circumstances
allowed under Rule 23(e)(1).

2021 IL App (4th) 200072-U

NO. 4-20-0072

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 4, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| LYNSEY ROSE MARIE POOL, | ) | No. 19CF227 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Scott D. Drazewski, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Turner and Cavanagh concurred in the judgment.

**ORDER**

¶ 1   *Held*: Where the trial court properly found the State met its burden to disprove defendant's affirmative defense of necessity beyond a reasonable doubt, we affirm defendant's escape conviction.

¶ 2   Following a bench trial, defendant, Lynsey Rose Marie Pool, was convicted of escape. The trial court sentenced defendant to 38 days' incarceration in the McLean County jail and 30 months' probation. Defendant appeals, arguing her conviction for escape cannot stand where the State failed to disprove her affirmative defense of necessity. We affirm.

¶ 3                    I. BACKGROUND

¶ 4   In March 2019, the State charged defendant with one count of escape in violation of section 31-6(a) of the Criminal Code of 2012 (720 ILCS 5/31-6(a) (West 2018)), alleging defendant knowingly failed to report to the McLean County detention facility for periodic

imprisonment. Defendant maintained she acted out of necessity and provided notice of her intent to assert the affirmative defense of necessity.

¶ 5       At trial, Sergeant Rodney Frank testified he worked as a corrections sergeant at the McLean County detention facility. On February 24, 2019, he received a phone call from defendant at approximately 3:40 p.m. in which defendant indicated she would not be reporting to the detention facility because she was on her way to the hospital. Defendant had been convicted of aggravated battery in McLean County case No. 17-CF-2. The trial court took judicial notice of defendant's periodic incarceration schedule for her conviction in case No. 17-CF-2. According to the schedule, defendant was to report to the McLean County detention facility on Sundays at 4 p.m. and would be released at 7 a.m. the following day.

¶ 6       Ovid Winans, assistant superintendent of the McLean County detention facility, testified medical staff were available to provide services to inmates at the jail from 6:30 a.m. until approximately 7 p.m., Sunday through Saturday. If an inmate required medical attention outside of the specified time frame, the correctional staff had access to an on-call physician who would be able to provide appropriate guidance.

¶ 7       Defendant testified that on February 24, 2019, at approximately 3:40 p.m., she called the McLean County detention facility to inform the corrections staff that she would not be reporting to the jail at 4 p.m. Defendant testified after she made the telephone call, she began walking to the emergency room at St. Joseph's Hospital because she was not able to find someone to provide her transportation. Defendant testified that eventually her mother picked her up approximately one block away from the hospital and drove defendant the remaining distance to the emergency room. Defendant also testified she was at the hospital for approximately three hours. After leaving the hospital, defendant went to a pharmacy to pick up medication prescribed

by an emergency room physician. Defendant testified she arrived at the jail between 10:35 p.m. and 10:45 p.m.

¶ 8    The parties stipulated to the admission of the emergency department records created at approximately 7:25 p.m. on February 24, 2019. The attending physician, Dr. Omer Nazeer, observed, "30-year-old female with no significant past medical history presents to the ER with complaints of hesitancy or urgency and dysuria. Also reports mild abdominal discomfort and cramping ***. Denies fevers chills nausea or vomiting. Denies any history of kidney stones. Denies all other complaints. Is well-appearing in no distress at this time. States she has used a primary care physician for which she is being worked up peripherally for an abnormal CBC a few months ago. At this moment she denies any hematuria or colicky flank pain." Defendant further indicated to emergency room personnel she had been experiencing symptoms for approximately one month. The emergency department records indicate defendant was discharged from St. Joseph's hospital at approximately 8:50 p.m.

¶ 9    Following closing arguments, the trial court found defendant guilty of one count of escape based on her failure to report to the McLean County detention facility for periodic imprisonment. Specifically, the court found the evidence failed to establish an affirmative defense of necessity. In its ruling, the court noted defendant contacted the correctional facility at approximately 3:40 p.m., from a location two blocks from the facility and more than two miles from the hospital. The emergency department records showed defendant was not treated until approximately 7:50 p.m. According to Dr. Nazeer, defendant was comfortable and in no distress. The court noted further defendant reported suffering for approximately one month but did not seek treatment on a day she was not required to be in custody. The court observed "a decision

- 3 -

was made by the defendant here in order to seek medical treatment of a nonemergency nature at the hospital emergency room as opposed to the jail."

¶ 10 Defense counsel filed a posttrial motion arguing defendant was not proven guilty beyond a reasonable doubt. Following a hearing, the trial court denied defendant's motion and sentenced defendant to 38 days' imprisonment and 30 months' probation.

¶ 11 This appeal followed.

¶ 12 II. ANALYSIS

¶ 13 On appeal, defendant argues the trial court erred when it found her guilty of escape. Specifically, defendant contends the State failed to disprove her affirmative defense of necessity.

¶ 14 "When reviewing a challenge to the sufficiency of the evidence in a criminal case, the relevant inquiry is whether, when viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Internal quotation marks omitted.) *People v. Hinthorn*, 2019 IL App (4th) 160818, ¶ 89, 146 N.E.3d 122. "The trier of fact has the responsibility to determine the credibility of witnesses and the weight given to their testimony, to resolve conflicts in the evidence, and to draw reasonable inferences from that evidence." *Hinthorn*, 2019 IL App (4th) 160818, ¶ 89. The reviewing court, when considering the sufficiency of the evidence, does not retry the defendant. *People v. Beauchamp*, 241 Ill. 2d 1, 8, 944 N.E.2d 319, 322 (2011). "A conviction will be reversed only where the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *People v. Belknap*, 2014 IL 117094, ¶ 67, 23 N.E.3d 325.

¶ 15        As relevant to this appeal, a person commits escape where she "knowingly fails to report to a penal institution or to report for periodic imprisonment at any time or knowingly fails to return from furlough or from work and day release or who knowingly fails to abide by the terms of home confinement." 720 ILCS 5/31-6 (West 2018). Here, defendant admits she "failed to report on time for periodic imprisonment, thereby committing the offense of escape." Defendant claims, however, she sufficiently raised the defense of necessity and the State failed to disprove that defense beyond a reasonable doubt.

¶ 16        Section 7-13 of the Criminal Code of 2012 (720 ILCS 5/7-13 (West 2018)) describes the necessity defense as follows:

> "Necessity. Conduct which would otherwise be an offense is justifiable by reason of necessity if the accused was without blame in occasioning or developing the situation and reasonably believed such conduct was necessary to avoid a public or private injury greater than the injury which might reasonably result from his own conduct."

The defense of necessity is available to a defendant, as a matter of law, if (1) the defendant was without blame in occasioning or developing the situation and (2) the defendant reasonably believed that her conduct was necessary to avoid a public or private injury greater than the injury that might have resulted from literal compliance with the law. *People v. Janik*, 127 Ill. 2d 390, 399, 537 N.E.2d 756, 760 (1989). "The defense of necessity applies when the threat of harm was immediate, and defendant's conduct was the sole option to avoid injury." *People v. Guja*, 2016 IL App (1st) 140046, ¶ 47, 51 N.E.3d 970. In this case, it is undisputed defendant was without blame in the occasion of her urinary tract infection. However, we do not believe defendant

satisfies the second prong of the test, concerning necessity to avoid a greater private or public injury than would result from her compliance with the law.

¶ 17        Necessity involves a choice between two admitted evils where other optional courses of action are unavailable. *Janik*, 127 Ill. 2d at 399. "The evils to be faced which would authorize the use of the defense must be grave and serious." *People v. Govan*, 169 Ill. App. 3d 329, 338, 523 N.E.2d 581, 586 (1988). The conduct chosen must promote some higher value than the value of literal compliance with the law. *Janik*, 127 Ill. 2d at 399. Conduct that would otherwise be illegal is justified by necessity only if the conduct was the sole reasonable alternative available to the defendant under the circumstances. See *Guja*, 2016 IL App (1st) 140046, ¶¶ 47-49. When other alternatives exist, which if carried out would cause less harm, then the accused is not justified in breaking the law. *People v. Haynes*, 223 Ill. App. 3d 126, 128, 584 N.E.2d 1040, 1042 (1991).

¶ 18        Winans testified inmates had access to medical staff from 6:30 a.m. to approximately 7 p.m., seven days a week. Frank testified he received a call from defendant at 3:40 p.m. on February 24, 2019, during which defendant indicated she would not be reporting to jail at 4 p.m. The emergency room reports indicate defendant did not see a physician in the emergency room until approximately 7:38 p.m. The trial court found defendant's timeline unpersuasive, stating: "[A]nd so that was three hours and 46 minutes later from when she had contacted *** Correctional Officer Frank, and then was there approximately an hour and a half. Yes, there was testimony that she thought she was there about three hours or so. I don't think that's that relevant as much as it does—what it does is refute her testimony, meaning the defendant's testimony, and causes the Court to consider that credibility to assign to same." The

court further observed defendant called the detention facility from a location approximately two blocks away. The hospital was more than two miles from defendant's location.

¶ 19        As the trial court noted, had defendant reported to the jail at 4 p.m. as required by the terms of her periodic incarceration order, the jail would have provided defendant with medical care. The court observed the medical reports indicated defendant only complained of "mild discomfort and cramping; and she is well appearing and in no distress at this time." The lack of immediacy with regard to defendant's medical condition was further highlighted by the fact defendant reported experiencing the pain for approximately one month. The court found defendant could have addressed her medical concerns by either reporting her symptoms to medical staff at the jail or by simply seeking medical attention when she was not required to be in custody subject to her periodic incarceration order.

¶ 20        Defendant relies on *People v. Kucavik*, 367 Ill. App. 3d 176, 180, 854 N.E.2d 255, 259 (2006) to support her claim. In *Kucavik*, the court concluded "to require the defendant's conduct to be the 'sole' alternative to illegal conduct would render the language in the statute referring to the accused's reasonable belief meaningless." *Kucavik*, 367 Ill. App. 3d at 176. We find *Kucavik* unpersuasive. As the supreme court told us in *Janik*, necessity involves a choice between two admitted evils where other optional courses of action are unavailable. *Janik*, 127 Ill. 2d at 399. Therefore, the defense of necessity presumes only two possibilities available to a defendant: (1) violating the criminal statute or (2) not violating the criminal statute—and that the former was the only reasonable option because the evil of the second option was greater. See *People v. White*, 78 Ill. App. 3d 979, 981, 397 N.E.2d 1246, 1247 (1979). As we noted above, the court in *Haynes*, citing both *Janik* and *White*, found the defense of necessity permitted only two choices. Likewise did the Fifth District in *People v. Branham*, 217 Ill. App. 3d 650, 651, 577

N.E.2d 803, 805 (5th Dist. 1991), the Second District in *People v. Kratovil*, 351 Ill. App. 3d 1023, 1034, 815 N.E.2d 78, 89 (2d Dist. 2004), and the First District in *People v. Boston*, 2016 IL App (1st) 133497, ¶ 39, 54 N.E.3d 217, to name only a few. *Kucavik*, on the other hand, does not appear, from our review, to have been cited favorably for the proposition espoused by defendant in any reported case. Here, defendant did not present evidence sufficient to raise a reasonable doubt that breaking the law by failing to report to jail was the sole reasonable alternative under the circumstances. We continue to follow the weight of authority in *Janik*, holding that the defense of necessity is not available where other reasonable alternatives are presented to defendant.

¶ 21 Therefore, in reviewing the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found defendant's necessity defense fails because of the lack of immediacy. We find the evidence was sufficient to find the essential elements of the crime were present to find defendant guilty of escape beyond a reasonable doubt.

¶ 22                                III. CONCLUSION

¶ 23 For the reasons stated, we affirm the trial court's judgment.

¶ 24 Affirmed.